The first case on the call, agenda number one, is docket number 123339, People v. John Michael Custer. Are you ready? You may proceed. Good morning. May it please the court, counsel. I'm Assistant Attorney General Michael Cibula on behalf of the people of the state of Illinois. Petitioner believes that his post-conviction counsel made a single particular mistake, and the appellate court has remanded for a preliminary criminal inquiry into that claim. In our briefs, we present three independent reasons why that decision should be reversed or vacated. Two of them are specific to the facts of this case, which is that, first of all, the appellate court's opinion is advisory, because by the time it had entered its order, there had already been a hearing on the pro se motion. Second is that Petitioner's claim is not cognizable in Crankle proceedings. And third, a broader argument, is that we are asking this court not to apply Crankle to post-conviction proceedings. I'd like to briefly touch on those first two issues that are specific to this case and then move on to that third broader argument. It's important to note, Your Honor, that this is not a case where Petitioner's claim against his post-conviction counsel is unknown or he's not had a chance to be heard or the record's not developed. We know what post-conviction counsel did here. It's undisputed that after he was appointed, he conferred with Petitioner about the claims he wanted to raise in his petition, that he, in fact, raised all of the claims Petitioner wanted raised. He amended the petition with a number of affidavits, including a claim that Petitioner and his girlfriend asked his trial counsel to appeal his guilty pleas. And we know that post-conviction counsel did such a good job, the case proceeded to a third-stage evidentiary hearing, which is somewhat rare and difficult to do in PC proceedings. Now, prior to that third-stage hearing, PC counsel wrote a letter to Petitioner and said, I've spoken with your girlfriend, and after talking with her, I've decided not to call her to testify. That decision is no surprise at all. Petitioner himself has said on the record that his girlfriend is, quote, and a liar who has lied in multiple legal proceedings. Petitioner has been arrested for beating and abusing her, so certainly she would not be a good witness at that third-stage hearing. At the third-stage hearing, Petitioner testified about his claims, including the claim that he and his girlfriend asked counsel to appeal. Counsel appeared and testified he was never asked to appeal. The court denied the post-conviction petition. After that hearing, Petitioner filed a pro se motion saying, my lawyer made a mistake, he should have called my girlfriend to testify. And ultimately, the circuit court did hold a hearing on that pro se motion, considered the pro se motion, and denied it. So the first problem specific to this case is that the appellate court's opinion is advisory. Aren't you then asking us for an advisory opinion? I think this court, neither party has asked this court to apply the public interest doctrine. We can't do that because this is a matter of first impression. But I think this court could use its advisory opinions, advisory power, if it wants to reach the ultimate issue of whether Crankle should apply to post-conviction. So we're not asking you, I guess, to issue an advisory opinion. But I think under this court's supervisory power, it could reach that issue. But certainly in this case, this particular claim, this particular Petitioner, his claim is moved because he's had that hearing. So there's no effectual relief that we can grant in this case, regardless, is that right? We cannot grant Petitioner relief, the relief he's requested. He's already had the hearing on this Pro Se motion. Now, Petitioner argues, for the first time in this court, that that hearing should not be considered a preliminary Crankle inquiry because he said the circuit court made a mistake. He admits there was a hearing, but he says there was a mistake at the hearing because the circuit court considered the merits of that Crankle motion. He considered whether did Post-Conviction Counsel really make a mistake. But there's nothing wrong with that. This court has said in more than a dozen cases, cases like Ayers, Jocko, Taylor, and more, that at that first stage of Crankle, the preliminary inquiry stage, courts obviously should consider whether the claim lacks merit. So he's had a hearing. The hearing comports with Crankle. Even if we assume that Crankle applies to PC, his particular claim is moved. Second, and independently, Your Honor, even if we assume that he was entitled to a hearing and even if we assume that no hearing was held, any such error in failing to hold a hearing would be harmless in this case because on its face, the claim that he's raising about counsel, the failure to call a particular witness to testify, it's settled that that is not a viable Crankle claim. In Crankle, you cannot complain about a legal strategy, and that's why in cases like Kidd and Chapman, this court has just straightforwardly affirmed circuit courts that declined to provide Crankle relief when what the petitioner was complaining about was the failure to call a particular witness. So again, even if we assume that there was some mistake below by the circuit court, even if we assume no hearing was held and he was entitled to one, that would be harmless because remand is futile in this case. On remand, the circuit court would be required by settled law to deny this claim. The broader issue, of course, Your Honor, is that we're asking this court not to apply Crankle to post-conviction proceedings. Two years ago, as Your Honors know, in People v. Ayers, a four-justice majority of this court held that a fair bones allegation of ineffective assistance, meaning an allegation that didn't identify which attorney supposedly made a mistake and what that mistake supposedly was. This court, four-justice majority, held that's enough to automatically require a Crankle inquiry. As Your Honors knows, the People and three justices of this court in dissent had some real concerns with that rule, particularly the effect of the drain on judicial resources, frankly. As the dissent pointed out, the rule has always been that when a party is represented by counsel, they can't file anything pro se, and courts do not need to consider anything pro se. But now under the Ayers rule, courts have to carefully scrutinize letters they receive, any kind of communication from a party, even if they're represented by counsel, looking for that fair bones allegation of complaint about counsel. And more importantly, as the dissent pointed out, if the court misses that, the appellate court is automatically required in every case to remand for an inquiry, even though we know that such fair bones allegations are highly likely to be completely baseless. The majority responded to that concern by saying that Crankle would be limited to post-trial motions. So what the petitioner is asking for here and what the appellate court has ordered, which is to apply Crankle now to collateral proceedings, would really go a long way to eradicating that assurance. It would bring a lot of the concerns that the dissent had and the People had with Ayers and other issues with Crankle into collateral proceedings. But there's no reason to bring those issues into PC. We know that PC works just fine without Crankle. It has done so for approximately five decades. Unlike trial, there's really no need for Crankle in post-conviction. First of all, unlike at trial, the main justification for Crankle is that we want to protect the defendant's Sixth Amendment right. Obviously, in post-conviction, there's no constitutional right to counsel. The right to counsel is a matter of legislative grace, and the legislature has never indicated in any way that it wants something like Crankle in post-conviction. To the contrary, as this court recognized in People v. Flores, the legislators expressly made clear that it wants circuit courts focused on constitutional claims that relate to the original trial. As this court said in Flores, the legislators made clear that a complaint about PC counsel is not a claim that can be brought in the circuit court in post-conviction. Even apart from the legislature's intent, the other justifications for Crankle, the desire to create a record, the desire to avoid a conflict of interest, those don't really exist in post-conviction. Obviously, at trial, counsel has a wide range of responsibilities. A lot of the work that counsel does at trial is off the record. That's not really the case in post-conviction. This court has recognized in cases like Perkins and Pendleton, McNeill, among others, that especially as compared to trial counsel, post-conviction counsel's duties are fairly limited, and their duties are really constrained and confined to what's already on the record. For example, we know that post-conviction counsel doesn't have to independently raise claims. They only have to support the claims that petitioner has already raised. We know from cases like Williams and more that in supporting the petitioner's claims, PC counsel does not have to look outside the record. PC counsel only has to support claims with evidence that's already part of the record. What that means is that, again, as compared to trial, PC counsel has relatively limited responsibilities, and we can evaluate their performance based on an already existing record. We don't have the same justifications that we have at trial. And as far as the concern about conflicts of interest, the conflict of interest at trial, where concern makes trial counsel reluctant to bring the issue of their performance to the court's attention, that's not an issue in post-conviction because we have Rule 651C, which requires counsel to certify what they've done, to certify that they've provided reasonable assistance. And that's really our final reason of why we don't need Crankle in post-conviction litigation, Your Honor. We already have a mechanism, as this Court has said, in cases like Perkins and Pendleton. We have 651, which this Court has said assures that petitioners receive reasonable assistance. Under 651, counsel has to certify what they've done, that they've provided reasonable assistance, that they've conferred with petitioner about his claims, that they've raised the claims he wants to raise, that they've reviewed the record, that they've supplemented the petition, amended the petition, that they've done what is necessary to present the claims to the court. And I think it's very telling that neither petitioner nor the appellate court identifies any flaws in this current system, any ways that it fails petitioner. So our position, Your Honor, is that we don't need Crankle because we have 651. We know the existing framework works. We have five decades of experience to prove that. Counsel, in this case, though, isn't it the post-conviction attorney that also was being challenged? And so how would that happen with 651 without a hearing? I'm not sure I fully understand the question, Your Honor, but I think post-conviction counsel is being challenged. In this case. He's being challenged based on his decision not to call a particular witness. So what should have happened under the existing framework is that appellate counsel challenged that in the appellate court. Now, of course, that would be an automatic loser of an appeal because, as I mentioned earlier, the particular complaint he has in this case, the complaint that you knew of a witness, you investigated that witness, but you decided not to call that witness, that's not cognizable in Crankle. It's frankly not cognizable under Strickland. That's a strategic decision that's immune from challenge. So in this case, I think what would have worked under the existing framework is that you don't have any proceedings in the circuit court. You challenge this decision based on the record. The existing record shows that PC counsel was aware of this witness because we have the affidavits and the amended petition, even if no motion had ever been filed. And, of course, we know that PC counsel didn't call this witness to testify because we have the transcript of the hearing. So what should have happened is this was challenged on appeal. The appellate court would have said this is not a cognizable claim. Counsel provided his Rule 651 certification. Therefore, the case is over. If there are any further questions, we would ask this Court to reverse the appellate court. Thank you. Thank you. Mr. Farrell? I have a question. Good morning, Congress. Good morning. Counsel? I'm Steve Farrell with the Office of the State Appellate Defender for the Petitioner Appellee, John Michael Custer. May it please the Court. The Post-Conviction Hearing Act has a purpose, and that purpose is to prevent people, criminal defendants, from being imprisoned in violation of their constitutional rights. In Johnson, which the State did not mention, I don't believe a single time in its presentation here, this Court said that the right to reasonableness of counsel necessarily flows from that purpose of the Act. So, it is. The right to reasonableness of counsel is for the purpose of protecting constitutional rights. In that way, it's not much different from Frank. Additionally, in Johnson, this Court said that where the right to reasonableness of counsel exists, there must be a means to assert it. The Court further said that the interests of the judicial economy are best served by bringing a claim of unreasonable to a third court's attention at the first opportunity. Under the reasoning of Johnson, it's a no-brainer that Frank would apply to post-conviction proceedings. It only makes sense. It allows the record to be developed, and it allows the claim to be raised at the first opportunity, and provides a redress that's much more effective at protecting constitutional rights of defendants than waiting for an appeal, for example. Now, there are different situations where it could be useful. One is actually where the record does directly rebut the 651C certificate. There would be an automatic win on appeal for the defendant. However, why wait two years or however long it's going to take to do the appeal when it could happen in the serving court if it's raised right away? And 651C certificates obviously can be rebutted and are all the time on appeal. It's not uncommon. Sometimes it's a very simple thing, like counsel fails to make a routine amendment adding a claim of ineffectiveness to the public counsel to prevent a claim from being barred by race judicata. Well, instead of taking years to figure that out in an appeal, a defendant could assert that in a critical plan, and that could be adjudicated immediately and move on with the petition. It's also problematic that when you appeal, what's going to happen when the claim is rebutted by the record is going to go back years later. The claim, the issue is not going to be fresh in the minds of the parties. People are going to have to review again what happened and get back into things. An appeal is not just not an efficient solution. Counsel, on the mootness issue, which you haven't addressed, but I asked your opposing counsel, is this moot? No. No. And if it is not moot, what kind of effectual relief are you requesting? So we're requesting the relief that the appellate court indeed granted. The appellate court found that no practical inquiry could help and therefore remanded for a practical inquiry. So the appellate court's position obviously is that there has never been any sort of practical inquiry. Was there a hearing in this case that went back to the court? What there was was a hearing on a motion to reconsider. And I've attached the transcript of that hearing to my brief. It's one and a half pages. It can be looked at very quickly, and it's obvious from that that what occurred was not a practical hearing. What the defendant in that hearing, the first line of that hearing is, Mr. Snyder was PC counsel, appears on behalf of the defendant. So Snyder is there representing the defendant in that case. When Snyder is asked to give argument on the motion, Snyder says, PC counsel says, I stand on the motion. That would never be cited in a practical inquiry. It would be ridiculous for counsel to say this is unreasonable. This is the counsel. I stand on the motion. Counsel needs to explain at that point the allegations. Typically they could admit or deny the allegations and explain what they did, why the defendant is wrong, or why the defendant is correct in those allegations. But counsel was never asked to do that. Obviously it would be error for the judge to fail to ask counsel to give some sort of explanation. Is the selection of who is called to witness a matter of trial strategy? I have a couple points on that. First, it's important to recognize that under this Court's jurisprudence,  that trial strategy was what occurred. And that's partly because you need to have counsel assert their strategy. Counsel here never said that what was done was for strategic reasons. If you have the inquiry and ask counsel and counsel says it was a strategy, then, okay, if the judge agrees with counsel and finds, yes, that's a sound strategy, then that's one thing. But the inquiry has to take place first. The state is putting the cart before the horse and asking this Court to prematurely reach the merits of this crankle situation. But there needs to be an inquiry first. Just for the record question, I'm not sure I'm clear. How does the letter from the lawyer to the defendant get in the record where he says, I'm making a choice not to call you? I know about your girlfriend. I've interviewed her. I'm making a choice not to call her. Where is that in the record? And how does that figure into our decision here? The defendant placed that in the record. And so that's an important point that I'd like to get to. There are three documents the defendant placed in the record along with his pro se claims of unreasonable assistance to counsel, and that was one of them. And it supports his claim. It supports his claim. Because what happened is his allegation of unreasonable assistance to counsel is that Counsel failed to essentially investigate and call Colvin. And so we know that Colvin was going to provide testimony that would have corroborated the defendant's testimony at the third stage of an interior hearing. We know because your affidavit says it, and we know because there's a letter that one of the other documents the defendant submitted that Colvin wrote to the judge two days before the post-conviction of an interior hearing. That letter makes the same, says that she would testify to the same thing as her affidavit does. So we know what her testimony would be. Counsel's letter, which was written to Custer 10 days, dated 10 days before the interior hearing, says that the only testimony Colvin would provide was that Custer passed a note to her prior to him accepting the plea, which would have been irrelevant to anything. But the question that Counsel needs to be asked here is, why didn't you know that she was going to provide this other testimony that corroborated what Custer said? And why is there this letter to the judge two days before the interior hearing that shows definitively that that's what she's going to say, and you're saying the only thing she's going to say is something else that's irrelevant? And maybe there's an explanation for that in Counsel's letter itself. His letter says that he talked to Colvin, and she was so rude that he terminated the phone call. So it's possible that he didn't actually complete an investigation of what her testimony would be, and that we have the ability to investigate here. So the facts of this case... If the issue of her credibility is what would turn a crank in a hearing, that Counsel knew about this witness, interviewed her, and made a choice not to call her for the reasons he stated in the letter, how would the defendant's earlier statement in the record that she's a liar fit into the analysis? Well, I think, again, there does need to be an inquiry first. Right now we're saying it's premature to get too far ahead of this, and that we just need to go back and have an inquiry and have Counsel explain. There are different ways of viewing the credibility of a potential witness, and I think that's something that the finder of fact trial court needs to sort out. That's why we need to have an inquiry. It could be that he could find her credible. The fact that there could be a reason, essentially, to find her to be more credible, and that could have added to the case that way. But again... Is your argument, Counsel, if we determine that if an attorney interviews a potential witness and then makes a decision not to call that witness, which indeed happened in this case, that that is trial strategy without the attorney having to say it's trial strategy, that it's an on-its-face trial strategy? Does your argument fall, then, that that's what we determine? No, because there does need to be an inquiry still. I mean, under this Court's jurisprudence, there needs to be an inquiry. There needs to be an inquiry even when you have a fair claim as an heiress that says nothing. In a situation where you've got a claim about something that's not a record, you need to go back and ask about that. Because Counsel could admit, potentially, when you go back, yeah, you know, I hung up on her prematurely and I didn't get all the information from her. Then you've got an ability to investigate, potentially. Would that lead to a situation where every decision of trial counsel could be questioned later on based upon ineffective assistance, saying he should have done this or she should have done that? Therefore, you have to have a claim without hearing as to every issue? No, I mean, well, when a claim is made, there does need to be an inquiry. At the inquiry, the judge can make a factual finding or a credibility finding. The judge can make a finding that would happen with strategy, and the inquiry can essentially end the claim at that point without it being pursued further if the judge makes those findings. So you are saying that the judge would have to make an inquiry if the question was did counsel ask the wrong question or did counsel failure to cross-examine properly and effectively? The judge has to make an inquiry? Well, the judge has to make an inquiry to determine whether what counsel did was actually strategy. There does need to be a determination as to whether it was strategy or whether counsel was neglectful or failed to investigate. You know, Strickland does talk about sound strategy, so there is a certain extent to which counsel might have a strategy but it's a strategy that no reasonable attorney would pursue, and so there does need to be an inquiry at least to assess that. Now, again, if counsel says it's strategy and the judge believes that it was sound strategy, then the claim can easily be disposed of in the circuit court. Was there an allegation that Snyder failed to discover helpful testimony? Well, yes. I think that essentially was the allegation that Snyder failed to investigate and call Michelle Coleman at the third stage of an interior hearing. Wasn't the basis of the motion to reconsider the failure to call the girlfriend, and isn't that what the motion stated and the trial court considered? So why isn't that equivalent to a Krankel-type hearing? Again, if we look at the hearing itself, we can see that it wasn't a Krankel hearing. Yeah, there wasn't much in that. It says I stand on the motion, I'll stand on the motion. So apparently the motion raised the issue, and the state is contending that was Krankel-like. The issue was before the court whether the trial counsel should have called the girlfriend. Well, respectfully, the appellate court unanimously disagreed that what occurred was a Krankel inquiry. Looking at the transcripts again, there are many things. Another thing that occurred that would be obvious to hear in a Krankel hearing in this situation was the state was asked to give argument. The state did give argument and say that there's nothing in this motion that wasn't raised, that wasn't argued at the third stage of an interior hearing, which was completely incorrect. And no one corrected the state's representation there. So it simply wasn't a Krankel inquiry. These are things that would not occur at a Krankel inquiry. They would be air at a Krankel inquiry, and they would certainly support a decision to remand if that's what happened. But obviously the appellate court unanimously concluded that there is no Krankel inquiry. And looking at the hearing, I don't know how someone could have concluded otherwise. Did the counsel file a 651 certificate here? Yes. And this is not sufficient to fulfill his duty of reasonable assistance? The thing about a 651C certificate, as I believe I mentioned earlier, is that it can be rebutted, so it's not a conclusive filing. And it often is rebutted on appeal. And this court has said in Johnson, again, that there must be a means to assert a reasonable assistance of counsel claim. So a 651C certificate is nice. It may encourage counsel to do the right thing, but there are situations where counsel might make a mistake or not fulfill the obligations of the file certificate anyway. And under Johnson, there needs to be a means to redress that. And the Krankel proceeding is the most efficient way to do so. So maybe if I give a couple more examples, it could be helpful. In terms of things that counsel could do that may not be on the record that you need to develop a record in Krankel inquiry, one thing that could happen is that you could have a petition that raises, like, ten claims, and counsel moves forward on one of them. So we wouldn't necessarily know from the record why counsel didn't go with those other claims, didn't proceed with those other claims. And so you might need a Krankel inquiry to figure out, was it because the counsel performed a full investigation into those claims and determined they were without merit? Is it possible that counsel was wrong and just decided not to investigate these witnesses because counsel had a misunderstanding of the law and thought the claim would be frivolous even if they did get the testimony that the defendant told them they needed to look for? So that's certainly a situation that could occur where you need a Krankel inquiry. And we also have situations where the defendant might tell counsel to investigate during the consultation that occurs to investigate certain witnesses, and it might not happen. It could be because of oversight, whatever reason it is, that wouldn't be on the record. And if it's not on the record, there's no way for the defendant to raise the claim. You need to have a Krankel inquiry to get that information on the record. A successive PC, as the state suggests, would be a ridiculously inefficient way to pursue that, even if it's possible. There's no cases in which a successive PC has been allowed to raise the issue. But if unreasonable assistance were to provide pause for a successive PC, then what you'd essentially be getting is the petitioner would take the same post-conviction petition they filed, their first post-conviction petition, and file it again. And it would have to go through all the stages years later and again result in defendants who have legitimate claims that violate their constitutional rights potentially being in prison for years longer than they need to be. Is there any significance to the fact that for 35 years neither this court nor any appellate court has talked about Krankel relating to post-conviction petitions? No. This issue hasn't been raised. This is a case, as the appellate court said, this is a case of first impression. It's something that, unfortunately, has had an inefficient system for many years. A system that doesn't allow these claims to be decided in the circuit court, which is what this court, again, unanimously in Johnson, said. That's the first step. You need to get these unreasonable counsel claims raised at the first opportunity in the circuit court. This court even remanded for the circuit court in Johnson to make a finding as to whether counsel in that case had provided unreasonable assistance. So under Johnson it's pretty clear that the Krankel inquiry should apply to post-conviction proceedings. Counsel, to follow up on Justice Thomas, doesn't that presume that there's a right to Krankel in post-conviction that has to be decided first? Well, I think that Johnson really seems to indicate, and it's in the unanimous opinion, all the reasoning behind that seems to go towards saying that it does apply to post-conviction proceedings. This court does need to decide that, whether Krankel applies. Again, it is a case of first impression. But under the reasoning of Johnson, it's hard to see a good reason why it wouldn't. If I could briefly comment on forfeiture. The state argues that its claims were not forfeited under the case of Peeble v. Donahall. But in Peeble v. Carter, a case that was decided after Donahall, the court found the state forfeited claims in a situation where the state had warned the trial court. So that's kind of directly in opposition to Donahall. They actually, for the Carter case, cited Donahall with a Blot C citation. So I think this court has discretion to apply forfeiture, and it really should. Otherwise, this court could end up hearing being basically blindsided by issues that were not in the district's belief to appeal and having to address air-correction issues that it couldn't have anticipated. And that is not efficient for this court. It takes it away from addressing the legal issues that it is seeking to address. So I think there's actually good reason to apply forfeiture to all the state's arguments. The argument about the issues being inextricably intertwined also is a discretionary decision by this court as well to apply forfeiture to issues that are inextricably intertwined. In Gallick, for example, a case that I cited, this court said that it may apply forfeiture where it finds that the issues are inextricably intertwined. So I think this court has discretion to apply forfeiture to the state's issues other than the single one that it raised in its petition for relief to appeal. And that concludes what I have. I would ask this court to affirm the appellate court's decision and, in the event that it reverses the appellate court's decision, to remand to the appellate court for consideration of the issues that the appellate court did not reach as a result of granting the cranker relief in this case. And I would be happy to answer any questions that you might have at this time. Seeing none. Thank you, Mr. Vero. Thank you, Ernst. Reply. Do you agree with the remand portion of the argument? If the court rules in our favor, then it should be remanded. Interestingly enough, the primary argument in the appellate court was that a petitioner proved his claim. So, in other words, PC counsel did such a good job that he proved his claim, which I think speaks to some of the issues before this court in this present appeal. On forfeiture, obviously it's impossible to forfeit mootness, so that's not really an issue here. Counsel mentioned the recent case of People v. Johnson a few times. This court doesn't even talk about Crankle and People v. Johnson. That was a very discreet issue, as the court said, in Johnson. It was an issue where, at the first stage, the petitioner said, I want you to file a petition with these five claims. Counsel didn't do that. So it was really more of an agency issue than Crankle. A lot of the things you just heard about how Crankle is supposed to operate is not consistent in any way with this court's precedent. Counsel said that we need an inquiry of counsel in Crankle hearings. That's absolutely not correct. This court said many times that a Crankle motion can be denied just based on the face of the motion itself. This court has never said you have to bring counsel in or question counsel. Counsel also said that the appellate court did not consider what occurred below a Crankle hearing. Again, the appellate court didn't consider that issue. The only issue that the petitioner presented to the appellate court and the only issue the appellate court decided was, should Crankle apply to post-conviction. It didn't consider whether the hearing that was held didn't comply with Crankle in one way or another. Counsel also argued before you that we have to inquire of counsel. We have to get counsel on the record to specifically say, yes, that was a specific strategic decision I made. That's not the law in Illinois or anywhere. It's the exact opposite. The Supreme Court said in Strickland, this court has said in many cases that we cite, the presumption is that it's a strategic decision. You have to show that the counsel entirely failed to challenge the state's case in any way. So we never have required counsel to come into court and say, yes, I made a specific strategic decision. And as I think as some of the questions got to, if we were to open this up the way the petitioner was asking for, after every trial that results in a conviction, we would have to have a second trial of every decision the counsel made. That's not the way the law operates. Lastly, Your Honor, I would point out again that, you know, we've had this 651 for 50 years. No one's ever suggested we bring Crankle into it. The appellate court, nor petitioner, has identified any flaws with the system. We have the experience showing that it works, and we would ask this court, if it does reach this broader issue, to hold it. Crankle does not apply to clout or proceedings, and particularly does not apply to post-conviction. Counsel, I have a question. Crankle proceedings have proved very helpful in post-trial proceedings. Why wouldn't they be helpful in post-conviction proceedings? Well, as we discussed in our briefs, Your Honor, and I mentioned earlier, even if we set aside the legislative intent that the circuit court should be focused on the constitutional claims that relate to the original trial and not claims of error by the post-conviction counsel, even if we set that aside, at trial, counsel has a wide range of responsibilities, and many of those responsibilities occur off the record. Post-conviction counsel has very limited duties. They just need to support the claims that petitioner has already raised. They just need to confer once with petitioner, and we can judge that performance based on the record. Some of the examples that petitioner raises in his briefs of, you know, what if there's no affidavit filed? Well, this Court has said that we presume that no affidavit is filed from a particular witness, but a Rule 651 certification is filed. We presume that counsel is being honest, that he did what he was supposed to do, that he looked into this, tried to develop the claims, and was able to do so. So really, 651 does a lot of the work that Crankle does at trial. But it's not your position that post-conviction counsel always provides reasonable assistance, is it? No. I mean, I'm not saying in literally every single case. What I'm saying is I do think, you know, if you look at this Court's precedent, the appellate court's precedent, it's very rare for any court to find that post-conviction counsel failed to provide reasonable assistance, and that's probably for a variety of reasons. One, I think we can trust the lawyers that do this work. They work hard, and they have good intentions. Also, as I mentioned, their duties are relatively limited, and also there is that 651. Counsel knows they have to certify to the court what they did, that they provided reasonable assistance and how they did that. You know, you're really putting your reputation and, frankly, your career on the line. You're not going to falsify something like that. And so, again, I think 651 does a lot of the work that Crankle does at trial. So unless there are any other questions, we would ask this Court to reverse this particular decision by the appellate court in remand for consideration of these other matters. Thank you. Thank you. Case number 123339, People v. Hester, will be taken under advisement as agenda number one. Mr. Cimbula, Mr. Barrow, we thank you for your arguments this morning, and you are excused.